**NEWTEX S. S. CORP. et al. v. UNITED STATES et al.**

United States District Court
S. D. New York.

Sept. 11, 1952.

Judgment Affirmed Dec. 15, 1952.

See 73 S.Ct. 285.

McGohey, J., dissented.

John J. Donovan, Jr., New York City, S. S. Eisen, New York City, for plaintiffs.

Myles J. Lane, New York City, for defendant United States.

Allen Crenshaw, Washington, D.C., Daniel W. Knowlton, Washington, D.C., of counsel, for defendant intervenor Interstate Commerce Commission.

Kirlin, Campbell & Keating, New York City, Warren Price, Jr., Washington, D. C., for defendant intervenor Pan-Atlantic S.S. Corp.

Kirlin, Campbell & Keating, New York City, Fullbright, Crooker, Freeman & White, Washington, D.C., for defendant intervenors Atlantis Sales Corp., Frankfort Distilleries, Inc., Magnolia Petroleum Co. and Magnolia Pipe Line Co., Phelps Dodge Corp., Converted Rice, Inc., Sher-

win-Williams Co., Congoleum-Nairn, Inc., Lone Star Bag & Bagging Co., Sears, Roebuck & Co., Harris County Houston Ship Channel Navigation Dist., Houston, Tex., City of Galveston, and Board of Commissioners of Galveston Wharves.

Before SWAN, Chief Judge, and Mc-GOHEY, and EDELSTEIN, District Judges.

EDELSTEIN, District Judge.

This is an action by two certificated water carriers, Newtex Steamship Corporation and Seatrain Lines, Inc., to set aside and enjoin an order of the Interstate Commerce Commission, dated August 9, 1951, whereby prior authority of the applicant Pan-Atlantic Steamship Corporation is amended to authorize it to extend its inland water operations to include the transportation of freight and passengers between specified Atlantic and Gulf ports and the ports of Houston and Galveston, Texas. Jurisdiction is invoked under the provisions of Title 28, U.S.Code, §§ 1336, 1398, 2284 and 2321 to 2325 inclusive. The Interstate Commerce Commission, the applicant Pan-Atlantic, representatives of the ports of Houston and Galveston and a number of shippers were granted leave to intervene as defendants.[1]

▮ After extensive hearings had been held before an Examiner, the issues were argued before Division 4 of the Commission which, with one Commissioner dissenting, issued its report and order granting the application.[2] The issue before the court, severely narrowed by the limited scope of its review[3] of an order of the Interstate Commerce Commission, is merely whether the order and report of the Commission encompass the ultimate findings required by statute, founded upon adequate basic or evidentiary findings which are in turn supported by substantial evidence in the record. The gravamen of the complaint is that, upon its face, the report is fatally defective because basic findings were made and established by the evidence which do not support the ultimate conclusion. We find no merit in this position.

The ultimate findings required by law[4] are that (1) "the applicant is fit, willing, and able properly to perform the service proposed", and (2) "the proposed service, to the extent authorized by the certificate, is or will be required by the present or future public convenience and necessity". These findings were explicitly made in terms of the statutory language, and an examination of the report discloses that they are rationally supported by adequate basic findings, which are supported by substantial evidence.

▮ In examining the report we bear in mind that the Commission is not required to make formal or detailed findings of fact.[5] It has not done so; on the

---

**1.** The Harris County Houston Ship Channel Navigation District, Houston, Texas (a political subdivision of the State of Texas); the City of Galveston, Texas; the Board of Commissioners of the Galveston Wharves; The Atlantis Sales Corporation; Frankfort Distilleries, Inc.; Magnolia Petroleum Co. and Magnolia Pipe Line Co.; Phelps Didge Corp.; Converted Rice, Inc.; The Sherwin-Williams Co.; Congoleum-Nairn, Inc.; Lone Star Bag and Bagging Co.; Sears, Roebuck & Co.

**2.** A petition for reopening and reconsidering was argued before the entire Commission and was denied, with two Commissioners dissenting. A subsequent petition for reopening and for a further hearing to receive proof of the discontinuation of services by the applicant was likewise denied.

**3.** *Alabama Great Southern Railroad Co. v. United States,* 340 U.S. 216, 71 S.Ct. 264, 95 L.Ed. 225; *United States v. Pierce Auto Freight Lines,* 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821; *United States v. Detroit & Cleveland Navigation Co.,* 326 U.S. 236, 66 S.Ct. 75, 90 L.Ed. 38. *Interstate Commerce Commission v. Parker,* 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051.

**4.** Part III of the Interstate Commerce Act, Sec. 309(c), 49 U.S.C. § 909(c), 49 U.S.C.A. § 909(c).

**5.** Except in a case where damages are awarded. Part III of the Interstate Commerce Act, § 316(c), 49 U.S.C. § 916(c), 49 U.S.C.A. § 916(c). *Alabama Great Southern Railroad Co. v. United States, supra,* 340 U.S. at page 227, 71 S.Ct. at page 271.

contrary, its findings are quite informally incorporated in a discussion of a technical transportation problem, and commingled with factual summary, statement of issue and exposition and evaluation of conflicting evidence. A piece-meal, hypercritical reading to extract the requisite findings, while it can be done, may lead to the dangerous possibility of distorting the meaning otherwise conveyed by words not divorced from the significance lent by context. In the use of words to express thought, if the whole is not greater than the sum of its parts, at least the true significance of the separate parts is a relative matter, to be determined only after a consideration of the whole. It is not meant, however, that findings may be undiscernable, vague or nonexistent, abdicating their function to some generalized impression said to be conveyed by the whole report. The question is whether "the essential basis of [the Commission's] judgment is sufficiently disclosed in its report" and whether "'the report, read as a whole, sufficiently expresses the conclusion of the Commission, based upon supporting data * * *'". Alabama Great Southern R. Co. v. United States, 340 U.S. 216, 228, 71 S.Ct. 264, 272, 95 L.Ed. 225. Reading the report as a whole, we think that the essential findings clearly appear.

The basic finding on fitness, willingness and ability sets forth the applicant's adequacy of financial position, equipment, facilities, experienced personnel and record of past operations in the coastwise trade, and there is an abundance of supporting evidence in the record. It is urged, however, that no finding of fitness and willingness, as distinguished from ability, has been made, and that upon the record such a finding would be unwarranted, because the applicant holds a large number of authorities which it does not exercise, in violation of its certificate which is conditioned upon the exercise of the authority specified. The Commission considered this argument but found that it did "not require the finding that the applicant is not fit and willing to perform the operations for which it here seeks authority." Though phrased negatively, the statement is nevertheless a finding of fitness and ability, if not upon its face, then at least by reasonable implication, and certainly when read in context. Nor is this finding precluded by the record. A failure to perform services in the past does not compel a logical inference that there will be a similar failure to perform a different service in the future. A favorable reference to the applicant's past operations and to the increasing patronage of its existing service as the result of a vigorous solicitation program discloses the evidence upon which the Commission rejected the contention that Pan-Atlantic would sacrifice public service to the profit of expedient operation. The nature of the issue is peculiarly within the scope of expert judgment in a specialized field, and the decision of the expert body may not be disturbed when based upon such evidence.

Plaintiffs argue that the ultimate finding of public convenience and necessity is arbitrarily and illegally based upon evidentiary findings that (1) the existing service is adequate, and (2) the proposed service cannot be operated without endangering or impairing the operations of existing carriers contrary to the public interest. A reading of the report discloses no such findings. After an extensive factual exposition, the report proceeds to "Discussion and Conclusions" centered about two principal issues: whether the existing service is adequate and whether there is room for another carrier in the trade. The "Discussion and Conclusions" is in the nature of a general evaluation of relevant considerations for and against the application, and the "findings" urged by plaintiffs are no more than pieces of the discussion surgically dissected from context. That the Commission found the existing service inadequate is clear.

In the section of the report largely devoted to a summary of evidence, the Newtex service was described as "scant", with the "hampering effect of such limited service" being aggravated "by the repeated failure of Newtex vessels to sail on schedule and by the numerous outright cancellations of sailings where the available ton-

nage was considered insufficient to warrant dispatch of the vessel." Under the heading of "Discussion and Conclusions" the report concludes that after disregarding certain vulnerable criticisms of existing service, "there remains substantial evidence that protestants' services do not fully meet the needs of shippers and that the extension of applicant's operations as proposed would improve the situation." A piecemeal approach might incur some confusion upon reading the sentence immediately following, that "On the other hand, patrons of protestants who oppose the application vouch for the adequacy of the existing services to meet their needs in all respects." But an evaluation of the entire discussion in context discloses the significance of this sentence as merely a statement of contrary evidence in no way detracting from the finding of inadequate service. For there follows a further consideration of the irregularity of the Newtex service, and the statement that Seatrain "too fails to meet the needs of the shippers here concerned" because of a tendency toward "selectivity" in offering no accommodations for shippers of less-than-carload lots. Finally, relating to a consideration of the issue earlier in the report, it is set forth that shippers at or adjacent to ports other than New York are entitled to service through the ports to which they are logically tributary, a plain implication of a finding of the inadequacy of the existing service.

The discussion of whether there is room in the trade for another carrier is based upon an evaluation of the prospect of the development of new business. It is indicated that on the basis only of present tonnage, an additional line in the trade is unwarranted, and "Unless a substantially larger overall volume of coastwise tonnage can be developed, extension of applicant's operations probably would force Newtex into a deficit and conceivably retirement from the trade." Plaintiffs apparently start with this sentence, which they label a "finding" and fine-comb the subsequent language for a finding that a "substantially larger" volume will be developed. Failing to discover a finding in such language, they insist that the Commission has found that Newtex will be forced into a possible retirement from the trade, upon allowance of the application. We do not so read the report. The discussion clearly discloses a judgment that the condition required will be met. After indicating that the potential tonnage had not declined proportionately to the ratio borne by the existing tonnage to the much greater pre-war tonnage, it was concluded that "the volume presently moving in this trade is not to be regarded as the maximum available for coastwise transportation." The addition of a vessel to the service by Seatrain, operating at or near capacity, is pointed out as demonstrating the availability of "more business." It was found that "a breakbulk line providing regular, dependable and reasonably frequent sailings will engender confidence and reliance upon coastwise service and attract additional traffic." This view is supported by reference to the increasing patronage of Pan-Atlantic's existing service. Isolating these statements from context, and, labeled as "findings", considering them cumulatively, we are constrained to hold that the Commission has sufficiently conveyed the idea that enough business will be developed to preclude Newtex's retirement from the trade.[6] Considering the statements in context, that conclusion is inescapable. To draw a contrary conclusion, in the light of the report, would be to indulge in a presumption that the Commission disregarded the public interest. Cf., United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821. The worst that can be said is that in the part of the discussion following the posing of the problem, the Commission did not introduce, with reference to its consideration

6. The dissenting Commissioner thought that the evidence concerning the anticipated new tonnage was not sufficiently definite to warrant the granting of the application. The court upon review may not thus weigh the evidence. But from the dissent it is evident that the finding of the majority of Division 4 is that "sufficient" new tonnage would be developed, the difference of opinion being on the weight of the evidence supporting the finding made.

of the development of additional traffic, the word "substantially", in order to balance the verbal equation with mathematical precision. But if such nicety of equivalence is required, it can be spelled out. For it was found that where existing service possesses the irregularity attributed to that of Newtex, "an increase in the frequency of service reasonably may be expected to increase the volume of traffic in greater measure than the proportionate increase in frequency of service." Such an increase in the volume of traffic resulting from the proposed service can reasonably be described as a "substantially larger" volume.

■■ It is apparent that the plaintiffs' essential position is not that basic findings were made upon substantial evidence which are inconsistent with the ultimate conclusions, but that the basic findings made are precluded by the evidence. So stated, the problem upon review is merely whether there is substantial evidence to support the basic findings. Except for a finding on passenger service, the report itself indicates the evidence contained in the record which supports the findings made, and the existence of which is sufficient to exhaust the function of the reviewing court. However, we discover no evidence to support a finding leading to the conclusion that Pan-Atlantic be permitted to undertake a passenger service. But this is an injunction proceeding, and an injunction will issue only when it is necessary for the adequate protection of a plaintiff's rights.[7] Plaintiffs here have in no way indicated that their rights will be prejudiced by permitting Pan-Atlantic the authority to carry passengers in the Atlantic-Texas service. Accordingly, they have no standing to seek an injunction on that score.

The injunctive relief will be denied and the complaint dismissed.

SWAN, Circuit Judge, concurs.

McGOHEY, District Judge (dissenting).

In my opinion the Commission's conclusion "that the present and future public convenience and necessity require the proposed operation by applicant" (Pan-Atlantic) is not supported as it is required to be [1] by the basic findings which the Commission has made.

The Commission has found:

(a) "Considering only the volume of coastwise tonnage currently moving to and from Texas, an additional line in this trade clearly would be unwarranted"

(b) "a break-bulk service paralleling that now provided by Newtex may be expected to divert a part of the traffic now moving by that line"

(c) Newtex had "substantial deficits" in 1947 and 1948. It had "modest profits" in 1949 and 1950.

(d) "unless a substantially larger overall volume of coastwise tonnage can be developed, extension of applicant's [Pan-Atlantic's] operations probably would force Newtex into a deficit and conceivably retirement from the trade."

These findings clearly show that "present" public convenience and necessity do not require "the proposed operation by applicant." Just as clearly, I think, they show that "future" public convenience and necessity will not require it, "unless a substantially larger overall volume of coastwise tonnage can be developed," which will be sufficient to insure that Newtex will not be forced "into a deficit and conceivably retirement from the trade." This, then, is the Commission's standard for determining "future" public convenience and necessity in this case. Accordingly, the conclusion reached would be warranted only if the Commission found that the new operation

---

**7.** "Suitors may not resort to a court of equity to restrain a threatened act merely because it is illegal or transcends constitutional powers. They must show that the act complained of will inflict upon them some irreparable injury." United

Fuel Gas Co. v. Railroad Commission, 278 U.S. 300, 310, 49 S.Ct. 150, 152, 73 L.Ed. 390.

**1.** Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291.

would develop or would, at least, be likely to develop tonnage sufficient to meet this standard.

The only findings as to the future that I am able to discover are these:

1.  "that protestant's services do not fully meet the needs of shippers and that extension of applicant's operations as proposed *would improve the situation;*" (Emphasis supplied.)

2.  that "a break-bulk line providing regular dependable and reasonably frequent sailings will \* \* \* attract *additional* traffic." (Emphasis supplied.)

‡  3.  that "a vigorous solicitation program will aid materially in building up substantial traffic volume."

This last finding is based on the testimony of Pan-Atlantic's representative. In context it seems to me to mean only that Pan-Atlantic's "solicitation program" will produce "substantial traffic volume" for itself. This, of course, could be accomplished by merely taking over the traffic now handled by Newtex and thus driving it out of business;—a result which I understand the Commission to hold "would be unwarranted."

These findings, which I think fall far short of the Commission's standard, do not support its ultimate conclusion.

I would reverse the order.