**LUCKENBACH S. S. CO., Inc.**

v.

**UNITED STATES et al.**

Civ. A. No. 90–130.

United States District Court
S. D. New York.

Jan. 22, 1954.

Burlingham, Hupper & Kennedy, Harold M. Kennedy, New York City, Odell Kominers, Henry G. Fischer, Washington, D. C., and Mark P. Schleifer, New York City, of counsel, for plaintiff.

Stanley N. Barnes, Asst. Atty. Gen., J. Edward Lumbard, U. S. Atty., James E. Kilday and John Guandolo, Sp. Assts. to Atty. Gen., for defendant United States.

Edward M. Reidy, Chief Counsel, and Allen Crenshaw, Associate Chief Counsel, Washington, D. C., for Interstate Commerce Commission.

John J. O'Connor, William L. McGovern and Abe Krash, Washington, D. C., Arnold, Fortas & Porter, Washington, D. C., of counsel, for intervenor Isbrandtsen Co., Inc.

Crowell & Rouse, E. Curtis Rouse, New York City, of counsel, for intervenor Parr-Richmond Terminal Co.

Paul Goldstein, New Haven, Conn., for New Haven Chamber of Commerce.

Before AUGUSTUS N. HAND, Circuit Judge, and IRVING R. KAUFMAN and DIMOCK, District Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an action by the Luckenbach Steamship Company to enjoin an order of the Interstate Commerce Commission granting a certificate of public convenience and necessity to the Isbrandtsen Company, Inc. Since the Commission's order was to go into effect December 28, 1953, a restraining order was granted by Judge Kaufman on December 21, 1953, pending a hearing and determination of the action by a three-judge court. The court was convened, pursuant to 28 U.S.C. §§ 2325, 2284, and a hearing was held at which counsel appeared for Luckenbach, Isbrandtsen, the Government, Parr-Richmond Terminal Co., and the New Haven Chamber of Commerce.

In general the certificate authorizes Isbrandtsen to operate its ships as a common carrier in eastbound intercoastal trade from Pacific Coast ports to Atlantic Coast ports. This includes (1) regular fortnightly service in the transportation of passengers and commodities generally from Pacific Coast ports, except Richmond and Port Hueneme, to Atlantic Coast ports during the period August through February, (2) regular fortnightly service of passengers and commodities from Richmond and Port Hueneme to Atlantic Coast ports, (3) regular fortnightly and irregular service of passengers and commodities from Pacific Coast ports to New Haven, Connecticut, (4) irregular service in the transportation of commodities generally from a limited number of ports in California south of Eureka to Atlantic Coast ports during August through February, and (5) irregular service in the transportation of wood pulp, wood flour, and lumber from certain Pacific Coast ports north of and including Eureka to Atlantic Coast ports. The Commission based parts one and four of its order on findings of inadequate eastbound service from the west coast during the peak season, from August through February. Year round eastbound service for the ports of Richmond and Port Hueneme in California, and New Haven, Connecticut, was authorized because of lack of service at those ports at present. Irregular service from ports north of and including Eureka, California, was authorized to meet a need for shipping space for the commodities named. Since the Commission found westbound service adequate, only a carrier capable of profitably carrying out eastbound trade alone could be authorized by the Commission to fulfill these needs. Isbrandtsen was found to be in such a position since it could use its ships presently in round the world trade

for completing the leg of that journey from the west coast to the east coast and these ships were found to have adequate shipping space available to carry on the basic service granted by the certificate.

Luckenbach attacks the order of the Commission because of its failure affirmatively to pass on certain issues that are said to have been properly before it. It is urged that the order should be remanded to the Commission because it does not deal with the problems of national defense, unfair competition, and possible detrimental effect on existing carriers. National defense is said to be involved because it would be to the military advantage to have ships involved in coastal routes always present in coastal waters in the event of war. Since Isbrandtsen will use ships in its round the world route to carry out the proposed eastbound service, the national defense would not be served. Unfair competition is charged because Isbrandtsen, unlike Luckenbach, carries on unregulated foreign service which would enable it to give rebates in that trade to shippers who also use its services in the proposed coastal routes. Moreover, it is claimed that Isbrandtsen's foreign service is self-sustaining and any revenue received from the proposed service would be added profit, thus giving them a competitive advantage over the existing carrier Luckenbach. The third charge is that the Commission failed to consider the detrimental effect the granting of the certificate would have on existing carriers. This is clearly a material issue and the failure of the Commission to consider it has been grounds for reversal of its order. Clarke v. United States, D.C.D.C., 101 F.Supp. 587.

■ Under Section 14(1) of the Interstate Commerce Act, 49 U.S.C.A. § 14(1), the Commission is not required to make detailed findings of fact except in a case where damages are involved. Manufacturers R. R. Co. v. United States, 246 U.S. 457, 489–490, 38 S.Ct. 383, 62 L. Ed. 831. The ultimate findings required by law are only that the applicant is fit, willing and able to perform the proposed service and that the service will serve the public convenience and necessity, 49 U.S.C.A. § 909(c). Such findings were made here. However, Luckenbach charges that under Section 8(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1007(b), the Commission must affirmatively make findings on the subsidiary issues discussed above. Their argument is based on the fact that these considerations are part of the National Transportation Policy enacted in 1940:

"It is hereby declared to be the national transportation policy of the Congress to provide for fair and impartial regulation of all modes of transportation subject to the provisions of this Act, so administered as to recognize and preserve the inherent advantages of each; to promote safe, adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers; to encourage the establishment and maintenance of reasonable charges for transportation services, without unjust discriminations, undue preferences or advantages, or unfair or destructive competitive practices; to cooperate with the several States and the duly authorized officials thereof; and to encourage fair wages and equitable working conditions;—all to the end of developing, coordinating, and preserving a national transportation system by water, highway, and rail, as well as other means, adequate to meet the needs of the commerce of the United States, of the Postal Service, and of the national defense. All of the provisions of this Act [I.C.A.] shall be administered and enforced with a view to carrying out the above declaration of policy." 54 Stat. 899, (1940), 49 U.S.C.A. note preceding section 901.

■ It is clear that this expressed policy must serve as a guide to the Commission in all its decisions. United States v. Great Northern R. Co., 343 U.S. 562, 576, 72 S.Ct. 985, 96 L.Ed. 1142; McLean Trucking Co. v. United States, 321 U.S. 67, 82–84, 64 S.Ct. 370, 88 L.Ed. 544. However it seems equally clear that the Commission can not and should not be required to discuss each consideration ex-

pressed in the National Transportation Policy in every decision it renders. "[T]he basic findings essential to the validity of a given order will vary with the statutory authority invoked and the context of the situation presented." Alabama Great Southern R. Co. v. United States, 340 U.S. 216, 288, 71 S.Ct. 264, 272, 95 L.Ed. 225. It is only necessary that the essential basis of the Commission's order appear in the report so that a court can satisfy itself that the Commission has performed its function. See Newtex S. S. Corp. v. United States, D.C. S.D.N.Y., 107 F.Supp. 388, affirmed, 344 U.S. 901, 73 S.Ct. 285, 97 L.Ed. 696; Capital Transit Co. v. United States, D.C.D.C., 97 F.Supp. 614, 621.

In support of their argument that failure to discuss national defense requires us to remand the order to the Commission, Luckenbach relies on Cantlay & Tanzola, Inc. v. United States, D.C.S.D. Cal., 115 F.Supp. 72. There an order of the Commission approving reduced rates filed by the railroad was remanded for a failure to discuss national defense. The proposed rates were filed to block' efforts to construct a pipeline from Texas to California and these lower rates would be likely to result in putting existing truck carriers out of business. Thus, instead of three modes of transportation for carrying the strategic material oil in the future, the new rates might result in railroads being the only carrier left in the field. The issue was strongly raised below and five members of the Commission dissented from the order pointing out that national defense was a strong consideration in the case. In the light of the " * . * * manifest considerations of national defense involved and the silence of the majority report on that essential basis for the order * * *" the court annulled the Commission's decision. 115 F.Supp. at pages 81–82.

■ In contrast the record here discloses that the issue of national defense was not raised below. Nor is it clear that there is any substantial interest of national defense involved or violated. The need for the proposed service was established and in the "context of the situation presented" we do not think an affirmative discussion of national defense was necessary to validate the order.

■ As to the detrimental effect on existing carriers, we think the Commission in its order clearly did pass on this. issue. It recognized that: "If the proposed service is authorized, applicant would necessarily have to share some of the existing traffic with the certificated carriers. Although some of the latter carriers would suffer a loss of traffic, the shippers would gain a more frequent service or at least a greater amount of cargo space, for which they have shown. there is a need during the period August through February." Furthermore in restricting the proposed service to peak periods, sharply limiting the ports to be served by year round service, and limiting the products that can be carried from ports in the northwest, the Commission has shown that it gave due consideration to the position of existing certificated carriers. A decrease in revenue or sharing of existing tonnage will not of itself defeat an application. Where, as here, it is shown that the proposed service will serve the needs of the public, and the transportation system, then the application may be granted. Norfolk Southern. Bus Corp. v. United States, D.C.E.D.Va., 96 F.Supp. 756, 760–761; Inland Motor Freight v. United States, D.C.Idaho, 36. F.Supp. 885, 888–889. Moreover, it is. for the Commission to decide whether the granting of the certificate in such a case is in the public interest. United States: v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 535–536, 66 S.Ct. 687, 90 L. Ed. 821. And the general rule is that: "The judicial function is exhausted when: there is found to be a rational basis for the conclusions approved by the administrative body." Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 694, 78 L.Ed. 1260.

■ The charge of unfair competition also seems clearly to have been considered by the Commission. The report notes.

that Isbrandtsen is at present engaged exclusively in unregulated foreign trade and that the fulfillment of the regular fortnightly service would be carried out by its ships as part of their round the world route. Isbrandtsen's certificate was sharply limited as to ports to be served, commodities to be transported, and time during the year when service could be rendered. Thus it is clear that the Commission weighed the need for the services against the possibility of unfair competition and found that with the limitations of the certificate and the close regulation which accompanies the receipt of such approval, the public convenience and necessity would be served by permitting the proposed service. This has been done before. See A. F. Coates Lumber Co. Contract Carrier Application, 265 I.C.C. 715 (1950). Luckenbach relies on administrative decisions of the I. C. C. to establish the validity of the unfair competition argument but in those decisions the Commission also failed to find a need for the service proposed. Geraci Contract Carrier Application, 7 M.C.C. 369 (1938); Parke § Son, Inc. Extension-Numerous States, 51 M.C.C. 422, 440 (1950). Moreover the record here shows that there are other carriers in the intercoastal trade who are at present engaged in foreign trade. There is no evidence to show that this has resulted in unfair competitive practices. Thus, where the issue raised does not seem of manifest importance and the Commission has indicated that it has considered it, we do not think it wise or necessary to protract the litigation further by remanding the order for more explicit and seemingly useless discussion.

The plaintiff's final claim is that the findings of the Commission are arbitrary and capricious because they are inconsistent with those made in West Coast Trans-Oceanic Steamship Line Common Carrier Application, Docket No. W–1019 (September 9, 1953). An attempt is made to prove this by extracting phrases from that order and attaching undue significance to them, but a report of the Commission must be read as a whole. Newtex S. S. Corp. v. United States, supra. East Coast applied for a certificate for intercoastal traffic generally, but the Commission, finding no need for additional westbound tonnage, denied the application because it was not shown that West Coast could operate profitably in eastbound trade alone. In the words of the Commission: "we are convinced that without authority to operate its ships in westbound service, any attempt to perform eastbound service only would prove unsuccessful and should be denied." The position of Isbrandtsen is clearly distinguishable in view of its proposal to use its ships now in round the world trade to carry on the eastbound service.

Accordingly, the restraining order granted by Judge Kaufman is dissolved and the complaint is dismissed.