PACIFIC INLAND TARIFF BUREAU, a corporation; Arrow Transportation Co. of Delaware, a corporation; System Tank Lines, Inc., a corporation; Howard R. Williams, Inc., a corporation; Weaver Bros., Inc., a corporation; Transport Service, Inc., a corporation; Portland Motor Transport, Inc., a corporation; Silver Eagle Company, a corporation; Blue Line Transportation Co., Inc., a corporation; James J. Williams, Inc., a corporation; Lee & Eastes, Inc., a corporation; Inland Petroleum Transportation Co., Inc., a corporation; Fleetway Transport, Inc., a corporation; Asbury Transportation Co., a corporation; Taber Tank Lines, Inc., a corporation; Rice Truck Lines, Inc., a corporation; Herb Meyer, Inc., a corporation; Big Bend Transport Co., a corporation; General Transport Co., a corporation; Valley Transport, Inc., a corporation; Geo. W. Taber, an individual, doing business as Geo. W. Taber Tank Trucks; Anna M. Barnes, an individual, doing business as A. B. Transportation; Joe Bookshnis; Dora Goodman, R. W. Goodman and Edwin Goodman, doing business as Sun Transportation Co.; Inland Navigation Company, a corporation; Upper Columbia River Towing Company, a corporation; Tidewater-Shaver Barge Lines, a corporation; Columbia Barge Lines, a corporation; and International Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers, American Federation of Labor, and Joint Council 37 Thereof, Plaintiffs,

v.

UNITED STATES of America, Chicago, Burlington & Quincy Railroad Company, a corporation; Great Northern Railway Company, a corporation; Northern Pacific Railway Company, a corporation; Chicago, Milwaukee, St. Paul & Pacific Railroad Company, a corporation; Spokane, Portland & Seattle Railway Company, a corporation; North Pacific Coast Freight Bureau, a corporation; Union Pacific Railroad, a corporation, Defendants,

and

Interstate Commerce Commission, Intervening Defendant.

Civil No. 7278.

United States District Court
D. Oregon.

Sept. 12, 1955.

Henry T. Ivers, Seattle, Wash., and William P. Ellis, William B. Adams, Portland, Or., for plaintiff Pacific Inland Tariff Bureau and the motor carriers.

John M. Hickson, Thomas J. White and Norman E. Sutherland, Portland, Or., for the barge lines.

James T. Landye, Portland, Or., for the Teamsters Union.

Fletcher Rockwood and Roy F. Shields, Portland, Or., Roger J. Crosby, R. Paul Tjossem, and Charles F. Hanson, Seattle, Wash., and James A. Gillen, Chicago, Ill., for the railroad defendants.

Stanley N. Barnes, Asst. Atty. Gen., James E. Kilday, John Guandolo, and Willard R. Memler, Special Assts. to the Atty. Gen., and C. E. Luckey, U. S. Atty., and James W. Morrell, Asst. U. S. Atty., Portland, Or., for the United States.

Edward M. Reidy, Chief Counsel, Samuel R. Howell, and Ellis V. Gregory, Washington, D. C., and William L. Harrison, San Francisco, Cal., for the Interstate Commerce Comm.

Before POPE, Circuit Judge, and McCOLLOCH and SOLOMON, District Judges.

SOLOMON, District Judge.

The defendants have requested the court to reconsider its opinion, reported 129 F.Supp. 472, enjoining the railroads and the Commission from putting into effect substantial rate reductions on interstate shipments of petroleum products from and to points in Washington, Oregon, Montana, Idaho, and Wyoming.

They assert that the factual and legal issues involved in this case are the same as those adjudicated by the Commission in Investigation and Suspension Docket No. 5853, Petroleum from Colorado and Wyoming to Western Truck Line Territory, 289 I.C.C. 457. The motor carriers sought to enjoin and annul the resulting orders of the Commission which authorized the railroads to reduce their rates on petroleum products in the case of Ward Transport, Inc. v. United States, D.C. Colo.1954, 125 F.Supp. 363. The court denied the injunction and upheld the order of the Commission. This decision was appealed to the Supreme Court, and on motion of the appellees, it was there affirmed per curiam without opinion, 1955, 348 U.S. 979, 75 S.Ct. 570.

Defendants contend that the legal issues decided in the Ward case are controlling here, and this court having decided those issues in a contrary manner, should now reverse itself.

Specifically, defendants contend that once the Commission finds that a rate proposed by a carrier is compensatory and no lower than necessary to meet competition, neither the Commission nor a court may interfere with such rate.

This contention is based upon defendants' assertion that Congress in the National Transportation Policy directed the Commission "to recognize and preserve the inherent advantages of each" mode of transportation and to "encourage the establishment and maintenance of reasonable charges for transportation services, without unjust discriminations, undue preferences, or advantages, or unfair or destructive competitive practices." The statement "all to the end of developing, coordinating, and preserving a national transportation system by water, highway, and railway, as well as by other means, adequate to meet the needs of the commerce of the United States, of the Postal Service, and of the national defense", merely expresses the result which Congress believed would be achieved by a proper administration of the Act. The final statement, "All of the provisions of this Act shall be administered and enforced with a view to carrying out the above declaration of policy," is interpreted by the defendants as merely requiring the Commission to administer the Act so as to preserve the inherent advantages of each mode of transportation and to prevent unfair or destructive competitive practices.

The defendants contend that the Commission's finding in the present case, "The record is convincing that these rates are reasonably compensatory, are no lower than are necessary to enable the railroad carriers to meet the competition with which they are confronted and would not contravene any of the provisions of the National Transportation Policy," is adequate, and is in compliance with the requirements of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., the Transportation Act of 1940, and the National Transportation Policy. Ward Transport, Inc. v. United States, supra;

Luckenbach S. S. Co. v. United States, D.C.N.Y.1954, 122 F.Supp. 824.

Defendants further contend that the Supreme Court by affirming the Ward case overruled Cantlay & Tanzola v. United States, D.C.Cal.1953, 115 F.Supp. 72, and destroyed the basis of this court's decision. We disagree.

In the Ward and Luckenbach cases, the court merely held that the Commission is not required to make irrelevant findings. This was made clear by the late Judge Augustus N. Hand, who in the Luckenbach case, after setting forth the National Transportation Policy verbatim, held [122 F.Supp. 827]:

"It is clear that this expressed policy must serve as a guide to the Commission in all its decisions. United States v. Great Northern R. Co., 343 U.S. 562, 576, 72 S.Ct. 985, 96 L.Ed. 1142; McLean Trucking Co. v. United States, 321 U.S. 67, 82–84, 64 S.Ct. 370, 88 L.Ed. 544. However it seems equally clear that the Commission can not and should not be required to discuss each consideration expressed in the National Transportation Policy in every decision it renders. '[T]he basic findings essential to the validity of a given order will vary with the statutory authority invoked and the context of the situation presented.' Alabama Great Southern R. Co. v. United States, 340 U.S. 216, 288, 71 S.Ct. 264, 272, 95 L.Ed. 225. It is only necessary that the essential basis of the Commission's order appear in the report so that a court can satisfy itself that the Commission has performed its function. See Newtex S. S. Corp. v. United States, D.C.S.D.N.Y., 107 F.Supp. 388, affirmed 344 U.S. 901, 73 S.Ct. 285, 97 L.Ed. 696; Capital Transit Co. v. United States, D.C.D.C., 97 F.Supp. 614, 621."

In this case, unlike the Ward and Luckenbach cases, the issue of whether the barge and truck lines could survive and whether their survival was necessary for

agricultural marketing and national defense, was directly raised. We summarized much of this testimony in our previous opinion.

■ The Federal Government has and is expending millions of dollars to improve navigation on the upper Columbia River. Millions of bushels of wheat, the basic crop of Eastern Oregon and Washington, are carried annually downstream by barge. The barges contend that they cannot survive without revenues from the upstream carriage of petroleum. There is an annual shortage of freight cars, particularly during the wheat harvesting season, and representatives of farm organizations fear the consequences of being completely dependent upon the railroads. We believe that in the "context of the situation presented", the Commission was required to make findings concerning the need for preserving a transportation system by water, highway and rail "adequate to meet the needs of the commerce of the United States * * *" See also Scandrett v. United States, D.C. Or.1940, 32 F.Supp. 995, Id., 312 U.S. 661, 61 S.Ct. 736, 85 L.Ed. 1108.

Bluntly stated, we fear that the proposed railroad rates if approved will drive the barge lines out of business. This may not happen, but has the Commission considered this matter sufficiently to say that it will not happen? Contrary to the railroad's contention, we believe that the Commission was required to consider this matter.

■ All or practically all tankcars in the Pacific Northwest were diverted to the East Coast during World War II, because of the submarine menace. During a two year period, the military needs of the Army and the Air Force, as well as civilian needs, were served almost exclusively by barges and trucks. At present, trucks are making rapid movements of aviation fuel between airbases, and barges are moving explosives without passing through populated centers. In view of the sensitive geographic location of the Pacific Northwest, the present turbulent state of international relations, and the vulnerability of this area to invasion and destruction, we believe that the Commission was obligated to consider and evaluate this and similar testimony concerning our national defense and to have made appropriate findings. Cantlay & Tanzola v. United States, supra.

■ We adhere to our previous opinion that the Commission's misreading of Exhibit 52 deprives us of the opportunity to determine whether the Commission had a reasonable basis for finding that the anticipated revenues from the proposed rates would be just, reasonable, and compensatory and would not cast a burden on other traffic.

Before this court can determine whether there was any reasonable basis for the Commission's findings, we must know whether the Commission would have arrived at the same conclusions had the exhibit been properly read.

The motion for new trial is denied.

The opinion of the court, 129 F.Supp. 472, as amended by the order dated July 19, 1955, [1] and to the extent supplemented by this opinion, shall constitute the findings of the court.

---

1. "It Is Hereby Ordered that the second full paragraph appearing on Page 21 of the Court's opinion filed March 3, 1955 (129 F.Supp. at page 484, 2nd column, 3rd paragraph), be and the same is hereby deleted, and in lieu thereof the following paragraph substituted:

"The Commission misread Exhibit 52. That exhibit does not show that the expected revenues from the proposed rates would range from 18 per cent to 853 per cent 'more' than the system average revenues, but rather that the expected revenues would range from 18 to 853 per cent 'of' the system average revenues. In other words, instead of the expected revenues all being in excess of system average revenues, between certain points they are less than one-fifth thereof.

"It Is Further Ordered that the word 'expenses' appearing on line 5, page 22 (line 7, 129 F.Supp. at [page] 485), of such opinion should be changed to 'revenues.'"