SOUTHERN KANSAS GREYHOUND LINES, Inc., and Missouri, Kansas & Oklahoma Coach Lines, Plaintiffs,

v.

UNITED STATES of America and The Interstate Commerce Commission, Defendants,

and

Kansas Trails, Inc., Intervening Defendant.

No. 9695.

United States District Court
W. D. Missouri, W. D.

Oct. 3, 1955.

James P. Aylward and Terence M. O'Brien, Kansas City, Mo., and Jack R. Turney, Jr., Washington, D. C., for plaintiffs.

Isaac K. Hay, Washington, D. C., for defendant Interstate Commerce Commission.

Stanley N. Barnes, Asst. Atty. Gen., and James E. Kilday and E. Riggs McConnell, Sp. Assts. to Atty. Gen., and Edward L. Scheufler, U. S. Dist. Atty., Kansas City, Mo., for defendant United States.

J. William Townsend, Topeka, Kan., and Oliver D. Rinehart, Paola, Kan., for intervening defendant Kansas Trails, Inc.

Before COLLET, Circuit Judge, and RIDGE and WHITTAKER, District Judges.

WHITTAKER, District Judge.

This is an action brought under Section 305(g) and (h), Title 49, U.S.C.A., and Sections 1336, 1398, 2284, 2321–2325, Title 28, U.S.C. and Section 1009, Title 5, U.S.C.A., to enjoin and to vacate an order of the Interstate Commerce Commission of November 23, 1954, granting a certificate of convenience and necessity to Kansas Trails, Inc., to extend its motor bus service from Osawatomie, Kansas, to Tulsa, Oklahoma, over U. S. Highway 169, serving all intermediate points, and an order of the Commission of March 21, 1955, denying protestants' (plaintiffs') petition for reconsideration.

The background facts, so far as essential to understanding of the questions presented, are that Kansas Trails, Inc., hereafter called "Trails", held Commission certificates authorizing it to conduct motor bus operations over U. S. Highway 169 from (1) Kansas City, Missouri to Osawatomie, Kansas (a distance of 55 miles), (2) from Iola to Chanute, Kansas (a distance of 18 miles), (3) from the north intersection with U. S. Highway 160, about 3 miles south of Moorhead, to the south intersection with U. S. Highway 160, 3 miles south of Cherryvale, Kansas (a distance of 9 miles), and (5) from Coffeyville, Kansas to Oolagah, Oklahoma, a distance of 45 miles (its present line running from Oolagah southeasterly over Oklahoma State Highway 58, a distance of 14 miles, to, and terminating at, Claremore, Oklahoma—thus not running into or out of Tulsa). This left "gaps" in Trails' bus service on U. S. Highway 169 extending between (1) Osawatomie and Iola, Kansas (a distance of 51 miles), (2) Chanute and the north intersection with U. S. Highway 160, 3 miles south of Moorhead, Kansas (a distance of 28 miles), (3) the point of the south intersection with U. S. Highway 160, 3 miles south of Cherryvale, and Coffeyville, Kansas (a distance of 13 miles), and (4) Oolagah and Tulsa, Oklahoma (a distance of approximately 32 miles).

For the purpose of closing these "gaps" in its bus service from Osawatomie, Kansas, southerly over U. S. Highway 169, and to enter and serve Tulsa, Oklahoma, as its southern terminal, so that it might operate direct, single-line, through, bus service between Kansas City, Missouri and Tulsa, Oklahoma, Trails filed its application with the Commission, under Section 207 of the Interstate Commerce Act, 49 U.S.C.A. § 307, asking a certificate of public convenience and necessity to operate as a common carrier by motor vehicle, of passengers, baggage and express, between Osawatomie, Kansas, and Tulsa, Oklahoma, over U. S. Highway 169, serving all intermediate points.

Southern Kansas Greyhound Lines, Inc., hereafter called "Southern", holding and using, among others, Commission certificates authorizing bus service

504

from Kansas City, Missouri, over U. S. Highways 40 and 24, to Lawrence, Kansas, and thence south, over U. S. Highway 59, to its junction with U. S. Highway 169 at Garnett, Kansas, and thence south, over U. S. Highways 59 and 169, to Chanute, thence south over U. S. Highway 169 to Coffeyville, Kansas, and thence west, over U. S. Highway 166 to its intersection with U. S. Highway 75, and thence south, thereover, to Tulsa; and, Missouri, Kansas & Oklahoma Coach Lines, hereafter called "MK&O", holding and using, among others, Commission certificates authorizing bus service from Coffeyville, Kansas, over U. S. Highway 169, to Tulsa, Oklahoma, each protested Trails' application, contending, among other things, that the proposed new service would duplicate Southern's service from Garnett, Kansas, over U. S. Highway 169, to Coffeyville, Kansas, and would duplicate MK&O's service from Coffeyville, Kansas, over U. S. Highway 169, to Tulsa, which service was adequate, and that, to succeed, Trails' proposed new service would have to divert a substantial amount of their traffic between these duplicative points, and, particularly, between the termini of Tulsa and Kansas City, and that their operations between these points were, and for some years had been, unprofitable, and that any such diversion of traffic would unduly prejudice them and threaten impairment of their existing, adequate but unprofitable, service between these points, and that, therefore, the proposed new service was unneeded, and would not serve public convenience and necessity; and that Trails was not "fit" or "able" to perform the proposed new service.

Extensive hearings were held upon the application before a joint board, constituted pursuant to Section 305(a), Title 49, U.S.C.A., in October and December, 1953, producing a record of 1,073 pages and numerous exhibits. After consideration, on June 7, 1954, the joint board served its recommended report and order, finding a "definite need" for "direct, single-line service" over Highway 169, between Kansas City, Missouri and Tulsa, Oklahoma, serving all intermediate points, and that "the present and future public convenience and necessity require operation by applicant as a common carrier * * * of passengers and their baggage, and of express in the same vehicle with passengers, between Osawatomie, Kansas, and Tulsa, Oklahoma, over U. S. Highway 169 * * * serving all intermediate points" and "that applicant is fit, willing and able properly to perform such service * * *."

Plaintiffs, and others, filed exceptions with the Commission to the joint board's recommended report and order, and Trails filed a reply thereto.

Thereafter, on November 23, 1954, Division 5 of the Commission issued its report and order granting Trails' application. That report (a) recited the background facts, and the antecedent steps taken in the proceeding, (b) stated the objective of the application (for direct, single-line, through bus service on highway 169 from Kansas City to Tulsa, and the reverse, serving all intermediate points), and pointed to and discussed the evidence adduced by Trails to show the need for this service,[1] (c) discussed the evidence as to financial condition, fitness and ability of Trails to render the pro-

[1] Consisting, chiefly, of testimony of witnesses residing at Olathe, Spring Hill, Paola and Osawatomie, Kansas, that they were without bus service southerly from Osawatomie on Highway 169, save for a tri-weekly bus operating from Osawatomie to Garnett, which service required a transfer at Garnett, to Southern's busses, to go south on highway 169 to any point intermediate to, or to, Coffeyville, Kansas, and (unless the destination were Tulsa—which could be reached by staying on Southern's bus which traveled thereto over other highways) there to transfer to an MK&O bus to go south on highway 169 to any point intermediate to, or to, Tulsa, Oklahoma, and, of course, entailing similar transfers on the returning of northbound journey, resulting in inconvenience and delay of passengers, and their baggage, and in costly delay of small freight shipments, particularly urgently needed repair parts, tools, oil well drilling cores and the like, and testimony of:

posed service,[2] and (d) pointed out that plaintiffs "opposed the application of Trails because they believe that the points involved are now being furnished with all of the service that available traffic will support; that this service is being maintained on a high standard; that it is being operated on a close margin and cannot stand a diversion of revenue without deterioration in the standards of service; and that the placing in operation of another carrier between Tulsa and Kansas City will result in a competitive situation destructive to them, to the ultimate disadvantage of both the existing carriers and the public," and that there are presently 22 bus schedules and 4 railroad schedules between Kansas City and Tulsa, and (e) pointed out that plaintiffs contended "that the joint board erred in finding (1) that the service recommended is required by the public convenience and necessity, and (2) in finding that Trails is fit and able to render the service recommended", and, in addition, that Southern contended "that the joint board erred in failing to find that existing service is satisfactory", and (f) the Commission then found "that persons residing in many communities along U. S. Highway 169 between Tulsa and Kansas City are not now receiving adequate service", and that the territory involved "is much too populous to be adequately accommodated by two and three line service", and that the granting of Trails' application "would result in direct, single-line service between all points on U. S. Highway 169 between Tulsa and Kansas City", and that Trails had "met the burden" of establishing that public convenience and necessity require its proposed service. The Commission then found that Trails' "weakened financial condition" had been brought about by its present disconnected "uneconomical and impractical operation", and that the granting of its application would "undoubtedly strengthen its financial position". The Commission concluded with the ultimate finding "that the present and future public convenience and necessity require operation by applicant as a common carrier by motor vehicle, in interstate or foreign commerce, of passengers and their baggage and of express in the same vehicle with passengers, between Osawatomie, Kansas, and Tulsa, Oklahoma, over U. S. Highway 169, through Garnett, Iola, Chanute, Cherryvale, and Coffeyville, Kansas, and South Coffeyville, Delaware, Colagahm, and Owasse, Oklahoma, serving all intermediate points; that applicant is fit, willing, and able properly to perform such service and to conform to the requirements of the Interstate Commerce Act and the rules and regulations thereunder; and that a certificate authorizing such operation should be granted." Order accordingly was entered November 23, 1954.

Plaintiffs timely filed, on January 24, 1955, a petition for reconsideration by the whole Commission, and, thereafter, on March 21, 1955, the Commission denied that petition for the stated reasons "that (1) the evidence adequately sup-

witnesses from Tulsa, Nowata, and South Coffeyville, Oklahoma, showing the necessity for like transfers, and incident inconvenience and delays, of passenger and freight traffic moving north from these Oklahoma points, over highway 169, to points north of Coffeyville, Kansas, particularly to Greeley, Osawatomie, Paola, Spring Hill and Olathe, Kansas, and testimony of witnesses from Coffeyville, Chanute, and Iola, Kansas, showing the need for like transfers and the incident inconvenience and delays of traffic moving south to Oklahoma points on highway 169 south of Coffeyville, Kansas, and moving north on highway 169 to points north of Garnett, Kansas.

2. The evidence being that Trails has been operating at a loss for several years, has an accumulated operating deficit of $134,290.00, and its current liabilities exceed its current assets by about $6,000.00, but has assets of the book value of $496,724.38, and that Crescent Oil, Inc., the controlling stockholder of Trails, and R. J. Johnson and others who own the stock of Crescent Oil, Inc., have guaranteed payment of all past and future obligations of Trails; and that Trails has the needed additional new bus equipment on order.

ports the findings of Division 5, and (2) valid grounds for reconsideration have not been shown."

Thereafter, on March 31, 1955, plaintiffs filed this action to enjoin and to vacate said orders of the Commission, and the parties were fully heard by us on September 8, 1955, and the cause was submitted upon the Commission's record and the pleadings and briefs of the parties.

■■ There being no question here of constitutional or statutory power of the Commission to render the challenged orders, our function, on this review, is strictly limited to a determination of whether the Commission's orders are based upon adequate findings and whether they, in turn, are supported by substantial evidence, Interstate Commerce Commission v. Union Pacific R. Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308, because as said by Judge Parker in Carolina Scenic Coach Lines v. United States, D.C., 56 F.Supp. 801, 803, "[w]hat public convenience and necessity require in the premises is a matter which Congress has confided to the judgment of the Commission, and not to the Courts, to determine", compare Chesapeake & O. R. Co. v. United States, 283 U.S. 35, 51 S.Ct. 337, 75 L.Ed. 824; Board of Trade of Kansas City, Mo. v. United States, 314 U.S. 534, 62 S.Ct. 366, 86 L. Ed. 432; United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971, and, hence, "The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 694, 78 L.Ed. 1260; Rochester Telephone Corp. v. United States, 307 U.S. 125, 146, 59 S.Ct. 754, 83 L.Ed. 1147. With these limitations in mind, we proceed to a consideration of the points urged by the plaintiffs.

Plaintiffs' first point is that, though the Commission's report took notice of their contentions that they are operating on such a close margin that they cannot stand any diversion of traffic without deterioration in the standards of their service, and that the proposed new service by Trails would result in a competitive situation destructive to them and their service, it did not make a specific subordinate finding upon that issue, as they claim the law requires, but made only the ultimate finding that the proposed service "is or will be required by the present or future public convenience and necessity", and that, therefore, the findings are not sufficient to support the orders. They rely chiefly upon the cases of Pan-American Bus Lines Operation, 1 M.C.C. 190, 203;[3] Clarke v. United States, D.C.D.C., 101 F.Supp. 587; Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051, and American Trucking Associations, Inc., v. United States, 326 U. S. 77, 65 S.Ct. 1499, 89 L.Ed. 2065.

It must be admitted that the Clarke case [101 F.Supp. 590] holds that the Commission must "make definite findings of fact as to the effect [upon existing carriers] of the grant of this certificate", of convenience and necessity, and that the ultimate finding, required by the statute, Section 307, Title 49, U.S.C.A., that the new service "is or will be required by the present or future public convenience and necessity" is not enough. But that case is out of harmony with every other case which we have been able to find upon the precise point here considered. We think the quoted statement from that case fails to distinguish between what the Commission must *hear and consider* and what it must *specifically find in its report.* The Clarke case relies upon the Parker and American Trucking cases, yet neither of them support it on this point, nor plain-

---

3. Holding that in determining public convenience and necessity the Commission must consider "whether the new operation or service will serve a useful public purpose, responsive to a public demand or need; whether this purpose can and will be served as well by existing lines or carriers; and whether it can be served by applicant with the new operation or service proposed without endangering or impairing the operations of existing carriers contrary to the public interest."

tiffs' position here. While those cases each hold that the Commission "must weigh the needs of the [applicant] against disadvantages to the [existing carriers] to find the balance of public convenience and necessity in determining whether to grant" the application (326 U.S. at page 68, 65 S.Ct. at page 1494 of the Parker case and 326 U.S. at page 86, 65 S.Ct. at page 1503 of the American Trucking case), neither of them say, as does the Clarke case, that the Commission must "make definite findings of fact as to the effect [upon existing carriers] of the grant of this certificate."

Plaintiffs also rely upon Hudson Transit Lines v. United States, D.C.S.D.N.Y., 82 F.Supp. 153, 157; L. A. Tucker Truck Lines v. United States, D.C.E.D.Mo., 115 F.Supp. 647, 649, and Luckenbach Steamship Co. v. United States, D.C.S.D. N.Y., 122 F.Supp. 824, 827. The Hudson Transit and Tucker Truck Line cases hold, on the point here considered, only that the *evidence* must show that present facilities are inadequate and that public necessity and convenience require the new service and, hence, they do not support the plaintiffs' position here. In the Luckenbach case a similar issue was involved, and the Commission had not made a specific subordinate finding as to the effect of the proposed new service upon existing carriers but had made, as here, only the ultimate finding that public convenience and necessity required the new service, and it was claimed upon the judicial review that the Commission had "failed to consider the detrimental effect the granting of the certificate would have on existing carriers." The Court pointed out that this was a material issue and that failure of the Commission "to consider it" has been held ground for reversal of its order, citing the Clarke case, but the Court held that "Under Section 14(1) of the Interstate Commerce Act, 49 U.S.C.A. § 14(1), the Commission is not required to make detailed findings of fact except in a case where damages are involved. Manufac-

turers' R. Co. v. United States, 246 U.S. 457, 489–490, 38 S.Ct. 383, 62 L.Ed. 831. The ultimate findings required by law are only that the applicant is fit, willing and able to perform the proposed service and that the service will serve the public convenience and necessity, 49 U.S.C.A. § 909(c). Such findings were made here." We pause to point out that the provisions of Section 909(c), Title 49, U.S. C.A., relative to water carriers, are precisely like the provisions of Section 307, Title 49, U.S.C.A. relative to motor carriers. The Court concluded "It is only necessary that the essential basis of the Commission's order appear in the report so that a court can satisfy itself that the Commission has performed its function." This case, it seems to us, does not support the plaintiffs, but is a clear and positive authority against their contention.

But, at all events, the Supreme Court has clearly decided the point. In United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821, the Court was dealing with orders of the Commission granting certificates to each of two bus lines to operate a through bus service from Portland to San Francisco, which they had until that time operated jointly as connecting line carriers. Other carriers over the same route had protested that the new service would divert revenues and threaten impairment of their existing service. The Commission's report said "It would be difficult to conclude that authorizing applicants to perform the operations set forth in our findings herein would so endanger or impair the operations of existing carriers as to be contrary to the public interest", but it did not make a specific subordinate finding thereon, but made only the ultimate finding that public convenience and necessity required the new service. The protestants, as plaintiffs, sued in the district court to set aside the Commission's order and complained that there was no specific finding upon the subordinate fact of the competitive effect of the new service upon existing carriers.[4] The District

---

4. Paragraph 5 of that complaint alleged that "The report and order contained no

finding that the granting of these applications or either of them will not result

508

Court set aside the Commission's orders, saying that "The Commission's report fails to disclose that it gave any consideration to the possibility of adverse effect upon any plaintiffs of the institution of two through line competitive operations between San Francisco and Portland." [5] The Government appealed to the Supreme Court and assigned that the Court erred in "holding that the Commission failed to give consideration to the effect upon plaintiffs of institution of two through line competitive operations between San Francisco and Portland, and that such considerations were necessary under the statutory provisions." [6] The Supreme Court reversed, and, in treating this aspect of the appeal, stated, 327 U.S. at page 531, 66 S. Ct. at page 696:

"And the findings expressly stated, concerning each application, that the 'present and future public convenience and necessity require the extended operations.'

"Apart from the fact that this was all that the statute required, cf. United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 66 S.Ct. 75 [90 L.Ed. 38], and the further fact that there can be no presumption that the Commission disregarded the public or any other interest, there are two obvious answers. One is that the Commission, in making the separately stated findings, *could not have been oblivious to the competitive consequences of its order or the relation of those consequences to the public interest.* The other is that those findings, read in the light of the report, adequately and expressly cover the element of public convenience and necessity, *including the competitive factors which the Commission inescapably had in mind.*" (Emphasis supplied.)

That authority seems to settle the question adversely to plaintiffs' contention, but we refer to one other case. It is Alabama Great Southern R. Co. v. United States, 340 U.S. 216, at page 227, 71 S.Ct. 264, at page 272, 95 L.Ed. 225, where the Court said, upon a like question, the following:

"As to the contention of appellants that the Commission's order is not supported by essential findings of fact, § 14(1) of the Interstate Commerce Act, 49 U.S.C. § 14(1), 49 U.S.C.A. § 14(1), does not require the Commission to make detailed findings of fact except in a case where damages are awarded. Manufacturers' R. Co. v. United States, 246 U.S. 457, 487, 489–490, 38 S.Ct. 383, 391, 392, 62 L.Ed. 831. The statute requires the Commission only to file a written report, stating its conclusions, together with its decision and order. This the Commission did, and the essential basis of its judgment is sufficiently disclosed in its report. Of course § 14(1) does not relieve the Commission of the duty to make the 'basic' or 'quasi-jurisdictional' findings essential to the statutory validity of an order. State of Florida v. United States, 282 U.S. 194, 215, 51 S.Ct. 119, 125, 75 L.Ed. 291; United States v. Baltimore & O. R. Co., 293 U.S. 454, 464–465, 55 S.Ct. 268, 272–273, 79 L.Ed. 587. And the basic findings essential to the validity of a given order will vary with the statutory authority invoked and the context of the situation presented. E. g., United States v. Pierce Auto [Freight] Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821; State of North Carolina v. United States, 325 U.S. 507, 65 S.Ct. 1260, 89 L.Ed.

in the impairment of ability of existing carriers to continue to serve the public nor is there evidence in these records or either of them sufficient to sustain such a finding." 42 Records and Briefs in the

United States cases, U. S. Supreme Court, October Term, 1945, No. 74 at page 7.
5. Ibid., p. 79.
6. Assignment of errors, Assignment No. 10, ibid., 88.

*1760; City of Yonkers v. United States,* 320 U.S. 685, 64 S.Ct. 327, 88 L.Ed. 400; *United States v. Carolina [Freight] Carriers Corp.,* 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971. Here the Commission found, in conformity to the statute invoked, supra note 2, that the differentials prescribed are 'justified as reasonable' and 'necessary and desirable in the public interest.' And 'the report, read as a whole, sufficiently expresses the conclusion of the Commission, based upon supporting data * * *.' *United States v. [State of] Louisiana,* 290 U.S. 70, 80, 54 S.Ct. 28, 33, 78 L.Ed. 181. Enough has been 'put of record to enable us to perform the limited task which is ours.' *Eastern-Central [Motor Carriers] Ass'n v. United States,* 321 U.S. 194, 212, 64 S.Ct. 499, 508, 88 L.Ed. 668."

■ In making the ultimate finding,—the only finding on this matter required by Section 307, Title 49, U.S. C.A.,—that public convenience and necessity required the new service by applicant, the Commission could not have been oblivious to the competitive consequences of its order upon the plaintiffs or upon the public interest, and its findings are adequate to support its orders here.

■ Plaintiffs' second point is that there was no substantial evidence that the proposed new service by Trails would not produce such competition and diversion of traffic as would impair plaintiffs' existing service, particularly that of Southern. They rely on the evidence that Southern's traffic has constantly decreased over the last five years and 10 months from 437,085 passengers in 1948 to 250,860 passengers in 1952 and 177,949 passengers in the first 10 months of 1953; that in the last three years and 10 months of its operations its net income was only 1% of its gross revenues, and in the 10 months preceding the hearing it had a net operating deficit of $9,738; that, though it has terminated

some service, it operates, on an average, with 22 empty seats per bus, and it argues that Trails, to succeed, would have to divert as much as 48% of the traffic now carried by Southern, and that this would inevitably impair Southern's existing service and oppose the public interest. To the contrary, there was evidence that Southern's busses were not operated as vacantly as it claimed, and that they at times were crowded, and that the proposed new service would create substantial additional traffic. Upon this conflicting evidence it was for the Commission to determine whether the new service would impair existing service and whether, in the light of the complex of the total situation, it would oppose or promote public convenience and necessity. The Commission's finding is supported by substantial evidence, and is conclusive upon us. *United States v. Detroit & Cleveland Navigation Co.,* 326 U.S. 236, 241, 66 S.Ct. 75, 90 L.Ed. 38; *Interstate Commerce Commission v. Parker,* 326 U.S. 60, 65, 65 S.Ct. 1490, 89 L.Ed. 2051.

Plaintiffs' next point is that the orders are not supported by definite and specific subordinate findings that the existing service being furnished by them is inadequate, and that there is no substantial evidence that the service now being rendered by plaintiffs is inadequate or that the proposed service by Trails is or will be required by the present or future public convenience and necessity.

■ What has been said above disposes of the contention that the orders are invalid for lack of definite and specific subordinate findings of inadequacy of existing service, but, moreover, the Commission's order specifically finds "that many persons residing in many communities along U. S. Highway 169 between Tulsa and Kansas City are not receiving adequate service" and that Trails has "met the burden of establishing that public convenience and necessity require its proposed service." The findings are, therefore, fully adequate to support the orders in this respect.

As to whether there was substantial evidence to support these findings, we have pointed out in Note 1, supra, that many witnesses testified to the inadequacy of the existing service and to the need for the new direct, single-line, through, service on U. S. Highway 169 between Kansas City and Tulsa, serving all intermediate points, proposed by Trails and authorized by the challenged orders. In fact plaintiffs tacitly concede that existing service is inadequate for the persons residing on the Olathe-Osawatomie segment of highway 169, by saying that the Commission should not have granted authority to Trails to operate, southerly, "beyond Garnett, or, at the most, Iola, Kansas." Such a limitation would still have required a transfer to Southern's busses at Garnett or Iola, Kansas, and, if the traffic be destined for one of the Oklahoma points on highway 169 between South Coffeyville and Oolagah, a second transfer to MK&O busses at Coffeyville, Kansas, and like transfers on the returning or northbound journey, when the testified need was not merely for more connecting line service, but was for direct, single-line, through, service on U. S. Highway 169 between Kansas City and Tulsa, serving all intermediate points, to avoid the inconvenience and delays of those transfers to the potential travelers residing along that highway, which the Commission found "is much too populous to be adequately accommodated by two and three line service." Plaintiffs point to the evidence showing that the use by these witnesses of bus service between the Olathe-Osawatomie, Kansas, segment and the South Coffeyville-Oolagah, Oklahoma, segment, and the reverse, has been spasmodic and infrequent, and will likely be so in the future, and, they argue, it does not amount to substantial evidence of inadequacy or need. The Commission took account of that argument and found that the limited quantity of the traffic was occasioned by the non-existence of service or the inconvenience, transfers, and delays of the available service. There was ample evidence of inadequacy of existing service, and of need for the proposed direct, single-line, through, service between Kansas City and Tulsa, serving all intermediate points, to support the Commission's finding that public convenience and necessity required such new service by Trails.

■ Plaintiffs next complain that there was no substantial evidence to support the finding of fitness and ability of Trails to perform the proposed new service. They point to the fact that the evidence shows, as summarized in Note 2, supra, that Trails is in a "weakened" financial condition. There was evidence, however, that Trails has assets of the book value of nearly a half-million dollars, and that Crescent Oil, Inc., which holds a majority of its stock, and R. J. Johnson and others, have guaranteed payment of all its past and future obligations, and that it has the equipment, to be augmented by new busses on order, necessary to perform the service. This, again, was a question of fact to be determined by the Commission upon conflicting evidence, and its determination of fitness and ability of Trails is supported by substantial evidence.

■ In this connection, plaintiffs also complain that on April 1, 1954 and prior to the joint board's recommended report and order herein, a contract was made between Trails and Union Transportation Company under which one McRae, managing partner of Union Transportation Company, took over management and control of Trails, and that the Commission knew this, from its records in Control Proceeding No. MC–F–5754, before Division 5 of the Commission rendered its report and order herein, and that this presented an additional question of fitness and ability of Union Transportation Company and of McRae upon which the Commission was required to, but did not, make a finding. The answer is that under Section 307, Title 49, U.S.C.A., the Commission was charged with the duty of determining whether the *applicant*, Trails, was, or was not, "fit, willing, and able properly to perform the service proposed", and not

whether, being fit and able as the Commission found, it might lawfully transfer control and management to another, as that matter can only be determined in a separate control proceeding before the Commission; and it is being investigated by, and litigated before, the Commission, at this very time, in a separate control proceeding under Commission Docket No. MC–F–5754. That matter is not properly before us on this review, as this proceeding is in no sense de novo and we are confined to the record as made before the Commission. United States v. Louisville & N. R. Co., 235 U.S. 314, 35 S.Ct. 113, 59 L.Ed. 245; Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 443–445, 50 S.Ct. 220, 74 L.Ed. 524; Acker v. United States, 298 U.S. 426, 434, 56 S.Ct. 824, 80 L.Ed. 1257; National Broadcasting Co. v. United States, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344, and plaintiff's offer in evidence, upon the hearing before us, of a transcript of that control proceeding is rejected and excluded.

Plaintiffs' last point is that, though the Commission had authorized temporary service by Trails between Osawatomie and Garnett, Kansas, the joint board erroneously excluded evidence showing the paucity of traffic that moved over that authorized temporary service. We dispose of the point, as did the Commission, by saying that the evidence was not material to the real issue, as the need shown was not for additional connecting line service, but was for single-line through service.

This treats with all of the points raised by the plaintiffs and shows that they are each without merit. Our conclusion is that the Commission's orders here challenged are based upon adequate findings, and that they, in turn, are supported by substantial evidence, and that no substantial error was made by the Commission in the receipt or rejection of material evidence, and that plaintiffs' complaint to enjoin and to vacate said orders of the Commission must be, and it is hereby, denied and dismissed.

All concur.