Norris Edward BASS, d/b/a N. E. Bass, Gladys, Virginia, Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

Atlantic Greyhound Corporation, Carolina Coach Company, Inc., Eastern Greyhound Lines, Richmond Greyhound Lines, Inc., and Virginia Stage Lines, Inc., Intervening Defendants.

Civ. A. 415.

United States District Court W. D. Virginia, Lynchburg Division.

June 30, 1958.

Wilbert G. Burnette, Lynchburg, Va., for petitioner.

E. Riggs McConnell, Washington, D. C. (Victor R. Hansen, Washington, D. C., and John Strickler, Roanoke, Va., on the brief), for the United States.

Carroll T. Prince, Jr., Washington, D. C. (Robert W. Ginnane, Washington, D. C., on the brief), for Interstate Commerce Commission.

William C. Battle, Charlottesville, Va., and Linwood C. Major, Jr., Washington, D. C. (Perkins, Battle & Minor, Charlottesville, Va., and Turney & Turney, Washington, D. C., on the brief), for intervening defendants.

Before SOBELOFF, Circuit Judge, and THOMPSON and BARKSDALE, District Judges.

PER CURIAM.

This three-judge court was constituted, as required by Title 28 U.S.C.A. § 2284, to hear and determine the plaintiff's petition, filed pursuant to Title 28 U.S.C.A. §§ 1336 and 2321–2325, seeking to set aside and annul an order of the Interstate Commerce Commission. The Commission had denied his application for a permit to operate in interstate commerce as a contract carrier by motor vehicle in charter service between points in Virginia and all points in the United States.

The business of the plaintiff is that of transporting children to and from schools in Campbell County, Virginia. He has also been transporting special groups, usually, but not exclusively, school children and boy scouts, under charter contracts on educational tours, camping trips and church-convention trips. He holds no permit from the Interstate Commerce Commission, although some of these trips are across state lines. His application asked the Commission to determine whether or not these interstate operations were legally permissible without a permit, and if the Commission should hold that a permit was required, he asked that one be granted to him.

## I.

In this proceeding, the plaintiff makes no contention that the fact findings of the Commission are not supported by substantial evidence. He contends, however, that by Title 49 U.S.C.A. § 309(b), being "fit, willing, and able properly to perform the service of a contract carrier by motor vehicle", he is entitled to a permit, notwithstanding the fact that a number of common carriers serving the same area are providing, in addition to their common carrier service, chartered contract service. The theory of the plaintiff is that the National Transportation Policy, 54 Stat. 899, 49 U.S.C.A. preceding Section 1, requires the Commission so to administer the Act as to recognize and preserve "the inherent advantages" of all modes of transportation, subject to the provisions of the Act; that common carriers are engaged in one mode of transportation, and contract carriers in another, and that considering the "inherent advantages" of both, it is not an answer to his application to say that contract services are being provided by the licensed common carriers, for, says the plaintiff, the public must not be "denied the service of a contract carrier, and forced to accept the substituted [charter] service of a common carrier."

The Commission and the five intervening common carriers who oppose the application contend that the common carriers operating in the area do in fact provide adequate charter service of the type which the applicant proffers; that the service the applicant proposes to offer the public is not essentially different from the charter service which the common carriers are already providing; and that there is no basis in law for any distinction between the charter services presently available and those the plaintiff seeks authority to provide. The defendants say that when the statute speaks of "recognizing and preserving the inherent advantages" of the respective modes of transportation, it refers to something other than the mere incidental question of whether the charter service is being provided by licensed common carrier or by one who engages in contract carriage exclusively.

The case of Schaffer Transportation Co. v. United States, 355 U.S. 83, 78 S. Ct. 173, 2 L.Ed.2d 117, relied upon by the plaintiff, does not support his argument. What the court there decided was that the existing rail service for shipments of granite did not excuse the Commission from comparing and considering the "inherent advantages" of shipments by motor service. We need not go so far as to adopt the defendants' view that the "modes of transportation" refer only to transportation by water, highway and rail, and to no other bases of comparison. "Modes of transportation" may possibly pertain to other differences. However, we do not agree that the National Transportation Policy adopted by Congress legislated, as the plaintiff contends, that, even though a particular type of charter service is made adequately available by common carriers, the Commission must nevertheless authorize duplicate service, whenever the same is tendered, by contract carriers who are not common carriers. In other words, we do not believe that Congress, in laying down its national policy, meant that, notwithstanding the existence of adequate contract charter service by common carriers, the Commission is still compelled to allow duplicate facilities by one who offers contract service exclusively.

We hold that when an application is made for a permit to furnish contract service in an area already served in that fashion by common carriers, the Commission has the duty to determine whether the existing contract service is adequate and whether the additional proposed service will be inconsistent with the public interests and the national transportation policy.

## II.

The further contention made by the plaintiff is based upon Title 49 U.S. C.A. § 303(b) (1). This section, it is true, exempts from regulation by the

Interstate Commerce Commission (except as to certain safety measures) motor vehicles employed solely in transporting children and teachers to and from school. We agree that, if the plaintiff limited himself to the transportation of children and teachers to and from school within the State of Virginia, the Interstate Commerce Commission could not regulate him, but we do not agree that he comes within the exempting provision of Section 303(b) (9) for the reason that he is not, in the language of that provision, a "person not engaged in transportation by motor vehicle as a regular occupation or business".

The purpose of Section 303(b) (9) is to exempt casual or occasional transportation of passengers or property by motor vehicle in interstate commerce by a person not engaged in transportation by motor vehicle as a regular occupation or business. It is clear beyond question, however, that the plaintiff is regularly engaged in that occupation or business.

■■ While administrative interpretation cannot change a clear provision of the law, it may, in a doubtful case, assist in its interpretation. We do not think that the point is doubtful, but even if it were, it would be set at rest by the consistent administrative rulings of the Commission during the past twenty years that a person engaged in transporting in *intrastate* commerce by motor vehicle as a regular occupation is not exempt from regulation if he undertakes also even casual or occasional transportation of passengers in interstate commerce. Interstate Commerce Commission Ruling No. 49, Apr. 15, 1937, and Interstate Commerce Commission Ruling No. 80, May 23, 1939. While the instances in which this view was formally declared by the Commission are not numerous, no instance has been cited to us wherein the Commission has departed therefrom. Although the facts are not precisely like ours, Webster Common Carrier Application, 72 M.C.C. 708 (1957) is analogous and is in accord with these rulings.

■ The Commission found and concluded that the proposed service is not essentially different from the charter service afforded by the opposing motor common carriers; that the applicant has failed to show a real need for the proposed service which cannot be met by the existing carriers, and that he failed to establish that the proposed operation would be consistent with the public interest and the National Transportation Policy. The rejection of the plaintiff's application necessarily followed.

■ We are not at liberty to try the case *de novo*. It is conceded that the findings of fact are substantially supported by the evidence. Even if we should disagree with the Commission's judgment in resolving the conflicting competitive considerations, we are not authorized to substitute our own views. United States v. Pierce Auto Freight Lines, 327 U.S. 515, at page 535, 66 S. Ct. 687, at page 697, 90 L.Ed. 821. See also Schaffer Transportation Co. v. United States, 355 U.S. 83, 78 S.Ct. 173, 2 L.Ed.2d 117, wherein the Supreme Court recently applied the well established rule that such considerations are for the Commission and not for the courts.

Finding no error of law, the plaintiff's petition is denied. An order will be entered accordingly.