STATE OF OKLAHOMA, Acting by and through the CORPORATION COMMISSION, et al., Plaintiffs,

v.

UNITED STATES of America et al., Defendants.

Civ. A. No. 7909.

United States District Court
W. D. Oklahoma.

Aug. 9, 1960.

262

James G. Welch, William Anderson and Fred J. Hansen, Oklahoma City, Okl., for plaintiff.

Paul W. Cress, U. S. Atty., Oklahoma City, Okl., Robert A. Bicks and John H. D. Wigger, Washington, D. C., for defendant.

Before MURRAH, Circuit Judge, CHANDLER, Chief Judge, and RIZLEY, District Judge.

MURRAH, Circuit Judge.

This suit involves another episode in the continuing, empiric process, instituted in 1925 by the Hoch-Smith resolution, 42 Stat. 801, 49 U.S.C.A. § 55, of administratively adjusting the sensitive organism, which is the grain rate structure, to achieve a greater degree of fairness and equity. See Board of Trade of Kansas City v. United States,

314 U.S. 534, 62 S.Ct. 366, 86 L.Ed. 432. Plaintiffs here seek to set aside an Interstate Commerce Commission order resetting the railroad rates for hauling grain from the midwest, particularly Oklahoma and Kansas, to the southeastern states via Memphis. This court has jurisdiction of the many parties and of the subject matter. 5 U.S.C.A. § 1009; 28 U.S.C. §§ 1336, 1337, 1398, 2284, 2321–2325; 7 U.S.C.A. §§ 1291, 1622.

The challenged order and report were entered in State Corporation Commission of Kansas v. Atchison, Topeka & Santa Fe Railway Co. Docket No. 29777 and cases consolidated therewith, 301 I.C.C. 703 (1957). The first order and report in these "Docket 29777" proceedings, 289 I.C.C. 553 (1953), were remanded by the Kansas federal court on the ground that the rates prescribed were "unjust and arbitrary" because " * * * the Commission employed an improper standard, one which had no relation to the problem before it * * *." State Corporation Commission of Kansas v. United States, D.C.Kan.1954, 128 F.Supp. 646, 652. After reconsideration on remand, the Commission, in the order and report here challenged, adhered to the rates set by the prior 1953 order.[1] On further review, the majority of the Kansas court found that the infirmities of the prior report had been removed by detailed discussion of a number of factors, viz., distance, historical relationship, the general rate break plan, interrelationship of the rates in question, and the national grain rate structure. State Corporation Commission of the State of Kansas v. United States, D.C.Kan., 184 F.Supp. 691.

■■ Yet the Secretary of Agriculture, intervening as the only party before us with no ax to grind, contends that the rate order is void for lack of requisite subsidiary findings—essentially the same problem that concerned the Kansas court in its determination whether there was a rational basis for the order. As defendants United States and Interstate Commerce Commission point out, by intervening for the first time at this stage of the proceedings, the Secretary is bound by the issues as cast and is precluded from injecting any new issues. However, the question whether the order is rationally based on substantial evidence is at least implicit in the principal contention of the original plaintiff from the inception of the lawsuit, and so it is proper, we think, for the Secretary to urge this same contention, albeit in different tenor and terms.

■ We are impressed with the Secretary's argument, for most assuredly, though the present rates assumedly contain inequities, the Commission abuses

---

1. The challenged order would effect the following changes in charges per hundredweight:

| | To Memphis for beyond | | Beyond Memphis to Raleigh | | Combination Rate to Raleigh | |
|---|---|---|---|---|---|---|
| | Present Rate | Prescribed Rate | Present Rate | Prescribed Rate | Present Rate | Prescribed Rate |
| Beloit (North Kan.) | 55.5¢ | 55.5¢ | 40¢ | 40¢ | 95.5¢ | 95.5¢ |
| Wichita (South Kan.) | 49¢ | 55.5¢ | 46¢ | 40¢ | 95¢ | 95.5¢ |
| Enid (Oklahoma) | 45¢ | 52¢ | 46¢ | 40¢ | 91¢ | 92¢ |

The cities, Beloit, Wichita, Enid and Raleigh are used by the I.C.C. as guides for designated areas, and rates from and to other points within the area are adjusted thereto. As can be seen, the order would raise certain rates west of Memphis, lower others to the east, and change the differential as between the three points of origin with respect to shipments to the southeast. The prescribed rates have never become effective due to various court injunctions.

264

its powers if it "corrects" the situation merely by fabricating new rates out of thin air and christening them "fair and equitable". See Secretary of Agriculture v. United States, 350 U.S. 162, 167, 76 S.Ct. 244, 100 L.Ed. 173; Alabama Great Southern Railroad Co. v. United States, 340 U.S. 216, 228, 71 S.Ct. 264, 95 L.Ed. 225; Luckenbach S.S. Co. v. United States, D.C.S.D.N.Y.1954, 122 F.Supp. 824, 828. In our case, the Commission, after considering the factors above enumerated, found the existing rates prejudicial and preferential to the extent that they differed from the rates prescribed.[2] And, we have found it indeed difficult to discern any rational connection between these prescribed corrective rates and the inequities which they were designed to correct. But our doubts in that respect, though grave, are not sufficient to cause us to differ from our Kansas brethren, for we are able to perceive that the report, taken as a whole, may, as they point out, conceivably communicate a sufficiently explicit rationale.

■ But other considerations not involved in this most recent Kansas case require further judicial scrutiny. The principal contention of the original plaintiff herein, the State of Oklahoma, joined by interveners Enid Board of Trade and Oklahoma Millers Association, is that the Commission abused its discretion in denying an Oklahoma motion to reopen, reconsider, and modify the order in view of newly discovered evidence, the so-called Kroll studies. As we understand them, these studies describe the actual movement of grain throughout the areas here involved on the basis of a scientific sampling of traffic data, and allegedly indicate that Kansas and other areas to the north and west thereof now hold a market advantage over Oklahoma in the southeast. Oklahoma argues that because it is precluded by geography and the overall rate structure from competing with these other states for northern and eastern markets, it should have the advantage at this southern market, and

that the reduction of differentials by this order will operate only to increase the present inequities. We are unable to say what effect, if any, these studies should be given. Indeed, it is not for us to say. See United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821; Interstate Commerce Commission v. City of Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420. But we observe that the studies may have distinct relevancy, for we were advised at the bar of the court that they were introduced in subsequent proceedings before the Commission, identified as Docket No. 31874. As the Commission points out in its report, " * * * the rates from all of the producing areas in the West to the South are now before us under the complaints embraced in or consolidated with No. 31874. The parties here are also parties of record in these proceedings. The reduced-rate proposals here considered, or a modification thereof, will undoubtedly be presented as a part of the record in [those] * * * proceedings * * * and they can be re-examined along with the evidence of a number of other parties, including a number of railroads not parties to the instant proceedings, who have a vital interest in the railroad grain-rate structure. Our conclusions herein are without prejudice to those reached in those proceedings." 301 I.C.C. at 747. Indeed, Commissioner Murphy, dissenting, was of the opinion that " * * * it would be more logical and more fully reflect the evidence either to prescribe an adjustment with much less drastic increases or to dismiss the proceedings, without prejudice to different conclusions in No. 31874, * * * in which these same rates and others are under consideration and in which the unfinished record is already more comprehensive than has been presented in the instant proceedings." 301 I.C.C. at 750.

■ A further consideration involving No. 31874 is introduced by the intervening Southern Railroads, who complain

2. The statutory basis for these findings is 49 U.S.C.A. § 3(1). See also 49 U.S.C.A. § 1(5).

that because of drastic, voluntary rate reductions throughout the southern states subsequent to the order, it has no relation to existing conditions and should therefore be remanded to the Commission for reconsideration in light thereof, or in the alternative consolidated with the proceedings in No. 31874. The Southern Railroads were parties to the 1959 Kansas case, and the order there is res judicata as to their contentions except with respect to these subsequent changed conditions, which allegedly radically affect the underlying equities. Cf. Atchison, Topeka & Santa Fe Railway Co. v. United States, 284 U.S. 248, 52 S.Ct. 146, 76 L.Ed. 273. Again, it is beyond our competency to adjudge what effect, if any, these changed rates should have on the portion of the rate structure here involved. But we understand that the current rates are all before the Commission in No. 31874.

■■ To be sure, we are fully aware that the province of fixing rates lies exclusively with the Commission, and furthermore, that their discretion in granting motions for rehearing, consolidation and the like, is broad indeed. We know we are concerned only with whether the rates are rationally based on fact and law, never with their wisdom. See United States v. Pierce Auto Freight Lines, Inc., supra; Interstate Commerce Commission v. City of Jersey City, supra; Board of Trade of Kansas City v. United States, supra.

However, in view of the admittedly more comprehensive consideration which is now being given these precise questions in No. 31874, plainly all that is here involved is whether these prescribed rates should go into effect pending the effectuation of new rates as the result of those proceedings. In these circumstances, the effect of this order can in any event be little more than interlocutory. And we were advised at the bar of the court, that in No. 31874, the tak-

ing of evidence has closed, and the issues have been finally submitted to the Commission.[3]

■ These considerations, coupled with the doubt occasioned by the lack of clear subsidiary findings, leads us to conclude that the matter ought to be remanded to the Commission for such action as it deems appropriate in light of the No. 31874 proceedings.

Consistent with this view, we must deny the motions of interveners Indianapolis and Chicago Boards of Trade, for contrary to their entreaties, the Commission's order as it affects them is expressly predicated upon the effectuation of the rates as therein set for southern Kansas. See 301 I.C.C. at 747, 750; 289 I.C.C. at 573.

All other subsidiary issues are rendered moot by these determinations, and judgment will be entered accordingly.

CHANDLER, Chief Judge (dissenting).

I am compelled to respectfully dissent from the majority opinion because it departs from an important principle of long standing which governs review of administrative orders. A reviewing court is strictly limited to a determination of whether an order of the Commission lies within the scope of its statutory authority, is based upon adequate findings and is supported by substantial evidence. Carolina Scenic Coach Lines v. United States, D.C.W.D.N.C.1944, 56 F.Supp. 801, affirmed 323 U.S. 678, 65 S.Ct. 277, 89 L.Ed. 550; McLean Trucking Co. v. United States, 321 U.S. 67, 64 S.Ct. 370, 88 L.Ed. 544; State Corporation Commission of Kan. v. United States, D.C. Kan.1954, 128 F.Supp. 646; Newtex S.S. Corp. v. United States, D.C.S.D.N.Y.1952, 107 F.Supp. 388, affirmed 344 U.S. 901, 73 S.Ct. 285, 97 L.Ed. 696; Houff Transfer v. United States, D.C.W.D.Va.1952,

3. All parties of record except the Chicago and Indianapolis Boards of Trade have indicated at one time or another, by pleadings filed before the Commission or in this action, that they would prefer that no new rates be put in effect pending the decision in No. 31874.

105 F.Supp. 851. The rule has also been couched in the following language:

"The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 694, 78 L.Ed. 1260; Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147.

This court does not have the power to set aside an order of the Commission or substitute its judgment for that of the Commission merely because the court might doubt the wisdom of the administrative decision or feel that some other action should have been taken. See Interstate Commerce Commission v. Illinois Central Railroad Co., 215 U.S. 452, 30 S.Ct. 155, 54 L.Ed. 280; Bass v. United States, D.C.W.D.Va.1958, 163 F.Supp. 1, affirmed 358 U.S. 333, 79 S.Ct. 351, 3 L.Ed.2d 350; United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 698, 90 L.Ed. 821. In the latter case, the Supreme Court had this to say regarding the function of a reviewing court:

"It is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene. *It cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination if that has support in the record and the applicable law.*" (Emphasis supplied.)

The majority opinion admits that the record as a whole "may * * * conceivably" support the decision of the Commission. In that event, it appears that the majority is remanding these proceedings principally on the ground that the Commission abused its discretion in (1) denying plaintiffs' petition for reconsideration and reopening to consider newly discovered evidence (the Kroll studies) and (2) denying various petitions of other parties to reopen these proceedings and consolidate them with Docket 31874, and on the further ground that there has been a change in conditions occasioned by certain voluntary rate reductions in the South.

The wide discretion of the Commission with regard to rehearing, reconsideration, reopening and consolidation precludes a reviewing court from interference with the Commission's action on such matters unless this discretion is clearly abused. See United States v. Pierce Auto Freight Lines, Inc., supra; Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420; Monumental Motor Tours v. United States, D.C.Md.1953, 110 F.Supp. 929.

The Kroll studies are concerned with movement of grain, which was only one of the factors considered by the Commission in reaching its decision, and there was other evidence relating to movement before the Commission when its report and order were issued. These studies were already before the Commission in Docket 31874 and it was surely in a better position to determine whether this evidence was of sufficient weight or importance to warrant reopening of the instant proceedings than is this court. I therefore fail to see an abuse of discretion on the part of the Commission in the denial of plaintiffs' petition.

As to the refusal of the Commission to reopen and consolidate these proceedings with those of Docket 31874, the Commission was familiar with both and with the grain rate structure as a whole and therefore better able than this court to determine whether that action should have been taken.

The contentions of the parties relative to a change of conditions or stale record do not appear to have been directly pre-

sented to or urged before the Commission, but were raised for the first time in this court. It is well settled that this court as a court of review cannot properly consider matters which were not presented to the Commission for its determination. See United States v. L. A. Tucker Truck Lines, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54; United States v. Capital Transit Co., 338 U.S. 286, 70 S.Ct. 115, 94 L.Ed. 93; McGraw Electric Co. v. United States, D.C.E.D.Mo.1954, 120 F. Supp. 354, affirmed 348 U.S. 804, 75 S. Ct. 45, 99 L.Ed. 635. Allegations as to a "change of conditions" or "stale record" have often been heard since the decision of the Supreme Court in Atchison, Topeka & Santa Fe Ry. Co. v. United States, 284 U.S. 248, 52 S.Ct. 146, 149, 76 L.Ed. 273, but they have just as often been rejected by the courts. The change of conditions relied upon by the parties hereto is not of such magnitude as to require remand of these proceedings.

The following statement by the Supreme Court in Interstate Commerce Commission v. Jersey City, supra, is particularly applicable to the situation here involved and to the considerations upon which the majority bases its decision to remand [322 U.S. 503, 64 S.Ct. 1134]:

*"One of the grounds of resistance to administrative orders throughout federal experience with the administrative process has been the claims of private litigants to be entitled to rehearings to bring the record up to date and meanwhile to stall the enforcement of the administrative order.* Administrative consideration of evidence—particularly where the evidence is taken by an examiner, his report submitted to the parties, and a hearing held on their exceptions to it—always creates a gap between the time the record is closed and the time the administrative decision is promulgated. This is especially true if the issues are difficult, the evidence intricate, and the consideration of the case deliber-

ate and careful. *If upon the coming down of the order litigants might demand rehearings as a matter of law because some new circumstance has arisen, some new trend has been observed or some new fact discovered, there would be little hope that the administrative process could ever be consummated in an order that would not be subject to reopening.* It has been almost a rule of necessity that rehearings were not matters of right, but were pleas to discretion. And likewise it has been considered that the discretion to be invoked was that of the body making the order, and not that of a reviewing body.

"Only once in the history of administrative law has this Court reversed a Commission for refusing to grant a rehearing on the contention that the record was 'stale.' In Atchison, T. & S. F. Ry. Co. v. United States, 284 U.S. 248 [52 S.Ct. 146, 76 L.Ed. 273] this Court held that because of changed conditions the Interstate Commerce Commission abused its discretion in denying a rehearing. * * *

"The Court however, promptly restricted that decision to its special facts, United States v. Northern Pacific Ry. Co., 288 U.S. 490 [53 S.Ct. 406, 77 L.Ed. 914], and it stands virtually alone. In Baltimore & Ohio R. Co. v. United States, 298 U. S. 349, 389 [56 S.Ct. 797, 80 L.Ed. 1209], Mr. Justice Brandeis, concurring, said, 'The Atchison case rests upon its exceptional facts. *It is apparently the only instance in which this Court has interfered with the exercise of the Commission's discretion in granting, or refusing, to reopen a hearing.*'" (Emphasis supplied.)

Some proceeding involving the grain rate structure will probably always be pending before the Commission due to the fact that the situation with regard

to these rates is in a state of constant change. In view of this fact if a proceeding can be remanded because of some slight change of condition, some new fact brought to light or some additional evidence presented, whatever its weight, then it is conceivable that one grain rate proceeding could continue its weary way through the Commission and courts ad infinitum and never produce a final order. The instant proceeding, Docket 29777, was instituted in 1947, *13 years ago*, and Docket 31874 was begun in 1955. If history repeats itself, and it is entirely possible, for admittedly Docket 31874 is a great deal broader, more comprehensive and more complex than Docket 29777, then Docket 31874 could haunt the Commission and courts for at least 7 additional years, thereby keeping Docket 29777 active for a total of 20 years.

The majority opinion also mentions some "doubt occasioned by the lack of clear subsidiary findings" which entered into its decision to remand this case. In this connection, I am in full accord with the decision of the Kansas court which has twice had these proceedings before it for review and which held (State Corporation Commission of the State of Kansas v. United States, D.C. Kan., 184 F.Supp. 691) that the findings of the Commission here questioned were adequate. I am further convinced that the findings were supported by substantial evidence, and that the conclusions reached by the Commission had a rational basis in law and in fact.

If this court has the power to prevent or indefinitely postpone the enforcement of administrative orders upon the grounds relied upon by the majority in this case, then the usefulness of administrative agencies is destroyed. The exercise of such judicial power over administrative proceedings thwarts the very purpose for which such agencies were created by Congress.

With regard to the motions to segregate of the Indianapolis and Chicago Boards of Trade, I agree with the majority that the motions should be denied.